Harold **BRUG** and Harvey D. Fiechtner, Plaintiffs,

v.

THE **ENSTAR GROUP, INC.** (F/K/A Kinder Care, Inc.), Richard J. Grassgreen, Perry Mendel, Lodestar Associates, L.P., Lodestar Management, Inc., Starchild Investment Partnership L.P., Starchild Holding Partnership L.P., Lodestar Partners, L.P., Starchild SBS Limited Partnership, L.P., and Lodestar Group, Defendants.

Civ. A. No. 90–89–JRR.

United States District Court, D. Delaware.

Jan. 24, 1991.

---

Edward T. Ciconte of Ciconte & Roseman, Wilmington, Del.; Kenneth G. Gilman, David Pastor, and John T. Maher of Gilman and Pastor, Revere Beach, Mass., of counsel, for plaintiffs.

Martin P. Tully, and Luke W. Mette of Morris, Nichols, Arsht & Tunnell, Wilmington, Del.; Charles B. Paterson, Executive Vice–President and Gen. Counsel, Enstar Group, Inc., Montgomery, Ala. and Glenn R. Reichardt, Jonathan N. Eisenberg, and Lisa L. Ferneau of Kirkpatrick & Lockhart, Washington, D.C., of counsel, for defendants Enstar Group, Inc. Grassgreen and Mendel.

Edward P. Welch, Esquire and Robert A. Glen of Skadden, Arps, Slate, Meagher & Flom, Wilmington, Del.; Henry P. Wasserstein, Jonathan M. Gutoff, and Michael I. Allen of Skadden, Arps, Slate, Meagher & Flom, New York City, for defendants Lodestar Associates, L.P., Lodestar Management, Inc., Starchild Inv. Partnership, L.P., Starchild Holding Partnership, L.P., Lodestar Partners, L.P., Starchild SBS Ltd. Partnership, L.P. and Lodestar Group.

## OPINION

ROTH, District Judge.

Plaintiffs Harold Brug and Harvey D. Fiechtner filed this action on behalf of themselves and others who purchased shares of Kinder–Care, Inc. common stock during the period from March 26, 1989 through September 23, 1989. Kinder–Care, Inc. ("KCI") is presently called The Enstar Group, Inc. The defendants in this action are The Enstar Group, Inc., Richard J. Grassgreen, Perry Mendel, Lodestar Associates, L.P., Lodestar Management, Inc., Starchild Investment Partnership L.P., Starchild Holding Partnership L.P., Lodestar Partners, L.P., Starchild SBS Limited Partnership, L.P., and Lodestar Group. The complaint alleges violations of federal securities laws and state law claims all arising out of a planned corporate reorganization by KCI.

In response to the complaint, the various defendants have filed two motions to dismiss, both of which are presently before

this Court. The first motion was filed by The Enstar Group, Inc., Richard J. Grassgreen, and Perry Mendel (collectively the "Kinder–Care Defendants"). The remaining defendants listed above (collectively the "Lodestar Defendants" or "Lodestar") have also filed a motion to dismiss. Both motions seek dismissal of the complaint pursuant to Fed.R.Civ.P. 9(b) and 12(b)(6). Since many of the grounds raised in the two motions to dismiss are similar and the Lodestar Defendants have also adopted the Kinder–Care Defendants' motion, we will discuss the two motions together. For the reasons stated below, we will grant both motions to dismiss, but will also grant plaintiffs leave to amend their complaint.

## I. PLAINTIFFS' COMPLAINT

As a preliminary matter, we note that the Kinder–Care Defendants have filed, with their opening brief on their motion to dismiss, an appendix, which contains several of the documents discussed in the plaintiffs' complaint. These documents, however, were not attached to the complaint and are not part of the pleadings on file. *Cf. Provident Nat'l Bank v. Frankford Trust Co.*, 468 F.Supp. 448, 450 & n. 2 (E.D.Pa.1979) (considering documents attached to complaint as exhibits and "incorporated into the pleadings"). Moreover, it would be inappropriate to convert the motion to dismiss into a motion for summary judgment pursuant to Fed.R.Civ.P. 12(b), since there has been no discovery conducted in the present case. Therefore, in considering the motions to dismiss, we will review only the plaintiffs' complaint. *See Melo v. Hafer*, 912 F.2d 628, 634 (3d Cir. 1990); *Ospina v. Department of Corrections*, 749 F.Supp. 572, 574 (D.Del.1990).

Plaintiffs' complaint contains three counts. Count I alleges that all defendants violated both Section 10(b) of the Securities Exchange Act of 1934 and Securities and Exchange Commission Rule 10b–5 promulgated thereunder. This count includes claims of individual violations, as well as charges of conspiracy and of aiding and abetting. The second count is for fraud and deceit under Delaware state law, and similarly alleges individual violations as

well as conspiracy and aiding and abetting. Count III asserts a claim for negligent misrepresentation under Delaware state law.

In brief outline, the facts alleged in plaintiffs' complaint are as follows. Prior to May, 1989, KCI was a holding company, which owned 87% of Kinder–Care Learning Centers, Inc. ("Learning Centers"). On or about May 26, 1989, KCI and Learning Centers jointly issued a press release, announcing a corporate reorganization plan. Under the plan, the two corporations would split into two unrelated public companies: Learning Centers, which would operate child care services, and KCI, which would conduct financial services. This press release was followed by KCI's issuance of a Form 8–K on or about June 9, 1989, which detailed the terms of the reorganization.

Among the terms of the plan were a provision entitling KCI shareholders to rights to purchase KCI common stock at a preferred price, and a term providing for a distribution of Learning Centers stock to KCI shareholders. The plan also stated that Lodestar would be given the opportunity to purchase shares of Learning Centers stock at a discounted price, and would commit to purchase any unsold shares of KCI. After the two public statements announcing the reorganization were issued, the price per share of Learning Centers stock rose significantly, and that of KCI stock remained stable.

However, on or about September 22, 1989, KCI issued a new press release and a new Form 8–K stating that the companies had abandoned the previously announced restructuring plan, and had substituted a new plan in its place. The new plan did not include either a rights offering to KCI shareholders at discounted prices or a distribution of Learning Centers common stock to KCI shareholders. In addition, the September plan altered the involvement of Lodestar, so that Lodestar would purchase Learning Centers directly, rather than through KCI as an intermediary. Following this September announcement, the prices of both KCI and Learning Centers stock dropped sharply, and both fell to

levels lower than those existing before the publication of the original reorganization plan. The revised reorganization plan was actually implemented. As a result, Lodestar acquired 63% of Learning Centers common stock. KCI then changed its name to The Enstar Group, Inc. ("Enstar"). Finally, on November 10, 1989, Enstar issued its third quarter earnings report which revealed a net loss of $99,427,000 or $1.81 per share for that quarter.

Throughout these events, the Lodestar Defendants, all of which are subsidiaries or affiliates of Defendant Lodestar Group, acted as financial partner and financial advisor to KCI and Learning Centers. Also throughout this time, Defendant Richard J. Grassgreen ("Grassgreen") was President, Secretary and a Director of KCI. In November, 1989, he became Chairman of the Board of Enstar. Defendant Perry Mendel ("Mendel") was Chairman of the Board of KCI from October, 1985 through October, 1989 and thereafter became Chairman of the Board of Learning Centers.

The plaintiffs and the members of the class they seek to represent all bought shares of KCI common stock between May 26, and September 23, 1989. Plaintiffs do not allege that they themselves, or the members of the class they seek to represent, read the May 26th press release or June 9th Form 8–K. They do allege, however, that they and all class members purchased KCI stock "in anticipation of" the opportunities presented by the original reorganization plan.

The complaint alleges that the defendants committed several misrepresentations or omissions of material facts when announcing the original reorganization plan in May and June, 1989. As more specific averments, plaintiffs allege the failure to disclose: (1) that the defendants did not actually intend to consummate the original restructuring plan; (2) that there were serious problems and risks associated with gaining a favorable ruling from the Internal Revenue Service regarding the distribution of Learning Centers stock; (3) that if the restructuring plan were revised KCI shareholders would be forced to relinquish their equity interests in Learning Centers; (4) that if the reorganization plan were revised it would include less advantageous terms for KCI shareholders; (5) that KCI would incur enormous operating losses in its quarter ending September 30, 1989; and (6) that pending legislation governing the savings and loan industry would impose increasingly stringent capital and investment requirements on KCI, and could threaten the abandonment of the original restructuring plan. Complaint ¶¶ 30–35.

## II. FAILURE TO COMPLY WITH FED. R.CIV.P. 9(b) IN COUNTS I AND II

The first ground raised in both motions to dismiss is failure to comply with Fed.R. Civ.P. 9(b). Defendants argue that plaintiffs have failed to plead fraud with particularity, and therefore Rule 9(b) requires the dismissal of both of the two fraud claims: Count I which alleges violations of federal securities laws, namely Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 promulgated thereunder, and Count II which charges fraud and deceit under Delaware state law. Plaintiffs contend that they have met the requirements of Rule 9(b) and consequently dismissal is not warranted.

### A. *The Standards*

■■■ The standards for proving fraud claims under federal securities law and under Delaware state law are similar. The elements that plaintiffs must prove to establish a claim under Section 10(b) and Rule 10b–5 are that the defendants: "(i) made misstatements or omissions; (ii) of material fact; (iii) with scienter; (iv) in connection with the purchase or sale of securities; (v) upon which the plaintiff[s] relied; and (vi) that reliance proximately caused the plaintiff[s'] injur[ies]." *In re Phillips Petroleum Sec. Litigation,* 881 F.2d 1236, 1244 (3d Cir.1989). A projection or forecast may constitute an actionable misrepresentation under Section 10(b) and Rule 10b–5 if it has no valid basis in fact. *Eisenberg v. Gagnon,* 766 F.2d 770, 775–76 (3d Cir.), *cert. denied sub nom. Wasserstrom v. Eisenberg,* 474 U.S. 946, 106 S.Ct.

342, 88 L.Ed.2d 290 (1985). To prove a claim of fraud under Delaware law, the plaintiffs must establish that the defendants: (1) with intent to deceive, (2) made false statements (3) of material fact (4) upon which plaintiffs relied (5) reasonably (6) and to their detriment. *Simons v. Cogan,* 549 A.2d 300, 304 (Del.1988).

■ Pursuant to Fed.R.Civ.P. 9(b), when pleading a claim alleging fraud, "the circumstances constituting fraud or mistake shall be stated with particularity." The scienter and intent elements of a fraud claim, however, may be averred generally. Rule 9(b) applies both to fraud claims under federal securities laws and to alleged fraud in violation of state law, *Christidis v. First Pennsylvania Mortgage Trust,* 717 F.2d 96, 99 (3d Cir.1983), and consequently covers both Counts I and II of the complaint in this action. Under Rule 9(b), a plaintiff must provide sufficient factual detail regarding the circumstances of the alleged fraud to place the defendants on notice of the precise misconduct charged. *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.,* 742 F.2d 786, 791 (3d Cir. 1984), *cert. denied,* 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985).

■ Following the Third Circuit's flexible approach to the rule, however, plaintiffs may still meet their pleading burden when certain facts are exclusively within the defendants' knowledge or control. This approach is designed to ensure that the application of Rule 9(b) does not permit "sophisticated defrauders to successfully conceal the details of their fraud." *Christidis,* 717 F.2d at 99–100. In such a case, the plaintiffs must allege that certain necessary information lies solely within the defendants' control, and must accompany these allegations "with facts indicating why the charges against defendants are not baseless and why additional information lies exclusively within defendants' control." *Craftmatic Sec. Litigation v. Kraftsow,* 890 F.2d 628, 645–46 (3d Cir. 1989). Generally, Rule 9(b) does not permit the circumstances of fraud to be alleged solely on information and belief. *Satellite Fin. Planning v. First Nat'l Bank of Wilmington,* 633 F.Supp. 386, 403 (D.Del.), *modified on other grounds,* 643 F.Supp. 449 (D.Del.1986).

**B.** *Rule 9(b) Applied to Counts I and II of the Complaint*

■ Defendants contend that both Counts I and II fail to comply with Rule 9(b)'s requirements for pleading fraud. The Kinder–Care Defendants assert that plaintiffs have failed to identify any specific fraudulent statements or documents or any other fraudulent conduct, and have not adequately alleged fraudulent knowledge. The Lodestar Defendants concur and argue further that the only fact alleged against Lodestar is that it acted as the financial advisor and financial partner to KCI and Learning Centers. In response, plaintiffs have cited various paragraphs of the complaint, particularly the six allegations of non-disclosure outlined above.

Having thoroughly reviewed the complaint, we agree with defendants that plaintiffs have not met Rule 9(b)'s requirements. First, and most significantly, plaintiffs have failed to comply with the standards for pleading the circumstances of fraud with specificity. Plaintiffs' allegations do not provide sufficient detail to place defendants on notice of the nature of the misconduct with which they are charged. Although plaintiffs have identified the two documents that contain the alleged misstatements and from which material information was allegedly omitted, the complaint provides little further detail on the charged fraud. Nor does the complaint include allegations that the facts of the alleged fraud are solely within the defendants' control, together with the accompanying allegations required under *Craftmatic Sec. Litigation,* 890 F.2d at 645–46.

Although further factual specificity might prove otherwise, most of the omissions alleged in the complaint appear to charge simply that defendants failed to predict the future. The clearest example is the allegation that defendants neglected to disclose in May and June, 1989, that KCI would suffer large operating losses in its quarter ending in September, 1989. Conse-

quently, without any additional details, plaintiffs have merely alleged that "a forecast turned out to be inaccurate," and such conduct is not actionable under Section 10(b) and Rule 10b-5. *Eisenberg*, 766 F.2d at 776. Similarly, plaintiffs' allegation that defendants failed to disclose the potential adverse impact of "pending legislation" governing the savings and loan industry, does not state that defendants were aware of this pending legislation in May and June, 1989, or why they should have known of it at that time. Nor does the complaint state whether the legislation actually became effective during the period in question.

Of the six allegations of non-disclosure in plaintiffs' complaint, the closest plaintiffs come to specifying circumstances of fraud is the allegation that the defendants "did not disclose that there were serious problems and risks associated with gaining a favorable I.R.S. ruling regarding the distribution of Learning Centers stock." Complaint ¶ 31. This averment, however, is subject to several different interpretations. It could indicate that the defendants never intended to submit the proposal to the IRS; that the defendants had planned to obtain an IRS ruling but then determined that alternative plans were more attractive; or that the defendants stated they would seek to obtain an IRS determination, while knowing that there was virtually no chance that the IRS would provide a favorable ruling. This single paragraph of the complaint with its broad and conclusory language does not constitute pleading the circumstances of the alleged fraud with particularity.

Moreover, plaintiffs do not adequately allege reliance on the alleged misrepresentations and omissions. In Counts I and II, plaintiffs have only included three generalized statements that suggest reliance: (1) that they and the members of the class they seek to represent purchased stock "at market prices which reflected the financial benefits of the corporate restructuring plan [originally announced] and in anticipation of the opportunity" to obtain its benefits, Complaint ¶ 27; (2) that "[i]n reliance upon said superior knowledge of defendants, plaintiffs and the other members of the

plaintiff class purchased KCI common stock at inflated prices," Complaint ¶ 58; and (3) that plaintiffs and the members of the class they seek to represent "relied on" the high market price of KCI common stock and "the false and misleading financial statements, press releases, and other statements of KCI, or information based on ... such statements and KCI's filings with SEC." Complaint ¶ 59. Yet, reliance on market prices or on the "superior knowledge of defendants" is not equivalent to reliance on the challenged documents. Moreover, plaintiffs do not allege any facts to indicate that they relied on the challenged documents. They do not state that they read the May 26th press release, the June 9th Form 8-K, or KCI's filings with the SEC. Nor do plaintiffs allege any other way in which they became familiar with these documents' contents, which might demonstrate that their purchases of KCI stock were made in reliance on the challenged documents.

In addition, as to the Lodestar Defendants, plaintiffs have not even alleged any misstatements or omissions of material fact. Although the complaint states that Lodestar served as financial advisor and partner to KCI and Learning Centers, it does not allege any specific involvement of Lodestar in issuing either the May 26th press release or the June 9th Form 8-K. The complaint's description of the contents of these documents, including the original restructuring plan's terms and Lodestar's role in the contemplated transaction, are not sufficient. The alleged fraud stems not from the terms of the plan but from the documents themselves, and there are no allegations that the Lodestar Defendants were involved in their preparation or issuance.

Finally, plaintiffs have failed to allege facts from which fraudulent knowledge can be inferred. The complaint only states broadly that the defendants "knew or recklessly disregarded the fact" that their misrepresentations and omissions "would artificially inflate" the price of KCI common stock, Complaint ¶ 52, and that these misstatements and omissions were undertaken

"with the intent to deceive or defraud ... [or] with such reckless indifference to truth as to constitute intent to deceive and defraud." Complaint ¶ 57. These general allegations do not claim that the defendants were actually aware of any falsity of or incompleteness in the challenged statements. More importantly, no supporting facts are included which might indicate that any of the defendants had such knowledge.

Although Rule 9(b) permits intent to be averred generally, "[i]n establishing *scienter* with respect to projections and opinions, it is insufficient to show ... that a forecast turned out to be inaccurate." *Eisenberg*, 766 F.2d at 776. As outlined above, however, plaintiffs' six allegations of non-disclosure by KCI amount to no more than this. For example, in the paragraph alleging failure to disclose that there were "serious problems and risks associated with gaining a favorable I.R.S. ruling," Complaint ¶ 31, plaintiffs do not state that KCI was aware of any problems and risks. In addition, no allegations of scienter are made as to the Lodestar Defendants or Defendants Grassgreen and Mendel. Thus, even under Rule 9(b)'s relaxed standard for pleading the intent element of fraud, plaintiffs' allegations are insufficient.

Therefore, we conclude that Counts I and II fail to plead fraud as required by Fed.R. Civ.P. 9(b).

## III. INADEQUATE PLEADING OF CONSPIRACY, AIDING AND ABETTING, AND CONTROL PERSON LIABILITY IN COUNTS I AND II

The second category of reasons defendants argue in the motions to dismiss, is that in Counts I and II plaintiffs fail to allege conspiracy, aiding and abetting, and control person liability with the necessary specificity under the applicable pleading requirements. Plaintiffs counter that they have met their pleading burdens.

### A. *Pleading Conspiracy*

The Third Circuit has long required that claims of conspiracy be supported by allegations of specific facts. *Kalmanovitz v. G. Heileman Brewing Co.*, 595 F.Supp. 1385, 1400 (D.Del.1984) (citing *Black & Yates, Inc. v. Mahogany Ass'n*, 129 F.2d 227 (3d Cir.1942)), *aff'd*, 769 F.2d 152 (3d Cir.1985). Under this rule, "[o]nly allegations of conspiracy which are particularized, such as those addressing the period of the conspiracy, the object of the conspiracy, and certain actions of the alleged conspirators taken to achieve that purpose, will be deemed sufficient." *Id.* at 1401.

Counts I and II of the complaint, however, simply state that the defendants engaged in a conspiracy, without providing any supporting factual details. Plaintiffs allege in these two counts that the several defendants "individually and in concert, directly and indirectly, engaged and participated in, or aided and abetted" a continuing course of conduct. Complaint ¶¶ 50, 56. Although the corporate and business relationships among the several defendants are identified, plaintiffs do not state when and how they allegedly conspired together to commit fraud. Nor do they allege any meetings, any communications, or any other means for effecting the alleged conspiracy. *See Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir.1988).

Nor do the paragraphs of the complaint that plaintiffs cite in their answering briefs contain any factual details of the alleged conspiracy. Several of the paragraphs state that the various defendants were in a position to conspire due to their corporate and business relationships, but none either provide facts demonstrating that the defendants had entered a conspiracy or describe acts taken in furtherance of the conspiracy. It is not sufficient to argue, as plaintiffs do in their answering briefs, that "it is implicit" that there was an agreement between Lodestar and KCI. Rather, the complaint must specify the facts supporting the conspiracy claims. Thus, the general allegations of conspiracy provided by plaintiffs

**1256**

are inadequate. *See Kalmanovitz*, 595 F.Supp. at 1400.

### B. *Pleading Aiding and Abetting Liability*

██ To prove a claim of aiding and abetting, a plaintiff must demonstrate that (1) a wrongful act was committed; (2) the defendant had knowledge of the act; and (3) the defendant knowingly and substantially participated in or provided substantial assistance for the wrongful act. *Monsen v. Consolidated Dressed Beef Co.*, 579 F.2d 793, 799 (3d Cir.), *cert. denied sub nom. First Pennsylvania Bank N.A. v. Monsen*, 439 U.S. 930, 99 S.Ct. 318, 58 L.Ed.2d 323 (1978). However, as noted above, plaintiffs simply allege in Counts I and II that the several defendants "individually and in concert, directly and indirectly, engaged and participated in, or aided and abetted" a continuing course of conduct. Complaint ¶¶ 50, 56. Plaintiffs do not even specifically state which defendants are alleged to be the primary violators and which the aiders and abettors. Nor do they indicate by what means the latter group provided substantial assistance to the former.

██ Even if the plaintiffs' allegations of misrepresentations and omissions were sufficient to meet the pleading requirements for the wrongful act element of aiding and abetting liability, plaintiffs have not pled sufficient facts to meet the substantial assistance and knowledge elements. To meet the substantial assistance element, plaintiffs must plead that the defendants who served as secondary actors consciously participated in the fraudulent acts. This element may also be met by inaction, but only if the inaction was consciously intended to aid the fraud. *Rochez Bros., Inc. v. Rhoades*, 527 F.2d 880, 888–89 (3d Cir.1975).

The complaint, however, does not include any allegations of specific acts taken by the Lodestar Defendants or by Defendants Grassgreen and Mendel. There are no allegations that any of the defendants other than Enstar's predecessor, KCI, participated in the May 26th or June 9th public statements. The only allegations involving the Lodestar Defendants, Grassgreen, or Mendel by name are those explaining the corporate position held by each one, and those asserting that these defendants' positions provided them with the opportunity to participate in any fraudulent activities. The complaint also lacks any factual allegations demonstrating that Lodestar, Grassgreen, and Mendel participated through inaction which was consciously intended to further the fraud.

In addition, the requirement that the secondary actor possessed knowledge of the wrongful acts "is a critical element in proof of aiding-abetting liability, for without this requirement financial institutions, brokerage houses, and other such organizations would be virtual insurers of their customers against security law violations." *Monsen*, 579 F.2d at 799. Plaintiffs contend, citing *In re Gas Reclamation, Inc. Sec. Litigation*, 659 F.Supp. 493 (S.D.N.Y.1987), that it is sufficient to allege the secondary actor should have known of the alleged fraud. However, plaintiffs' complaint does not even state that the secondary actors "should have known." Moreover, the *Gas Reclamation* court only stated that "should have known" allegations are permissible when supported by factual allegations of substantial assistance and when "atypical financing transactions" are involved; then a court may infer knowledge from the alleged facts demonstrating the actor's participation and from the uniqueness of the transaction. *Id.* at 503–04. The complaint in the present action, however, does not allege that the original restructuring plan was atypical, nor does it include factual allegations of substantial assistance.

For these reasons, we find that the allegations of aiding and abetting liability are insufficient.

### C. *Pleading Control Person Liability*

██ Under Section 20(a) of the Securities Exchange Act of 1934 a defendant who is a "controlling person" may be secondarily liable for securities law violations. The status of control person is measured by "the power or potential power to influence

and control the activities of a person, as opposed to the actual exercise thereof." *Rochez Bros.*, 527 F.2d at 890–91. To establish control person liability, however, a plaintiff must show not only that the particular defendant was a control person but also that he or she either participated in the fraud or intentionally furthered the fraud through inaction. *Id.* at 890; *Hill v. Equitable Bank, Nat'l Ass'n*, 599 F.Supp. 1062, 1084 (D.Del.1984).

■■■■ Plaintiffs have sufficiently alleged that Defendants Grassgreen and Mendel are "controlling persons" under Section 20(a). They have set forth the corporate leadership positions of each individual defendant and their "potential power" to influence KCI during the period in question. As outlined above, however, plaintiffs have not alleged any facts demonstrating culpable participation or deliberate inaction by Grassgreen and Mendel. They have therefore failed to plead controlling person liability for these defendants.

■■■ As for the Lodestar Defendants, plaintiffs have not even alleged sufficient facts to demonstrate their status as "controlling persons." Plaintiffs have only stated that Lodestar was the financial advisor and financial partner to KCI and Learning Centers, and that Lodestar thereby had access to material inside information. No facts are alleged which indicate any way in which KCI was susceptible to control by Lodestar.

Thus, the facts alleged are insufficient to support control person liability for either the individual or the Lodestar Defendants.

## IV. THE PERMISSIBILITY OF ASSERTING COUNT II AS A CLASS CLAIM

Count II of the complaint asserts a claim for fraud and deceit in violation of Delaware state law. Defendants contend that this claim may only be brought as a stockholder derivative claim and not as a class action claim. Plaintiffs argue that class action treatment of this claim is appropriate.

■■■■ Under Delaware law, we must look to the nature of the wrongs alleged in the complaint in order to determine whether a cause of action asserted by a shareholder is a derivative one or one that may be raised in an individual or class action. *Lipton v. News Int'l, Plc*, 514 A.2d 1075, 1078 (Del.1986). An individual or class suit may only be maintained when the shareholder plaintiffs have been injured directly, rather than indirectly through the harm to the corporation itself. *Kramer v. Western Pacific Indus., Inc.*, 546 A.2d 348, 351 (Del. 1988). The test is whether the plaintiffs have suffered a "special injury," which is defined as either an injury distinct from that suffered by other shareholders or one involving the shareholder's contractual rights, such as the right to vote. *Lipton*, 514 A.2d at 1078; *accord In re General Motors Class E Stock Buyout Sec. Litigation*, 694 F.Supp. 1119, 1131 (D.Del.1988).

■■■ Plaintiffs' Count II clearly does not assert wrongs involving their contractual rights as shareholders. Whether they have alleged an injury distinct from that suffered by other shareholders, however, is less certain. The principal harm plaintiffs have alleged is that the prices of KCI and Learning Centers stock plummeted after the revised restructuring plan was announced in September, 1989. Causes of action that allege a waste of corporate assets or a decrease in the value of stock which falls equally on all stockholders constitute claims of direct wrongs to the corporation and must be brought as derivative actions. *Kramer*, 546 A.2d at 353.

■■■ Apparently, plaintiffs also seek to assert that the defendants fraudulently induced them, and the members of the class they seek to represent, to purchase shares of KCI common stock. Plaintiffs allege that they and the potential class members all purchased shares between the May, 1989 announcement of the original reorganization plan and the publication of its abandonment in September, 1989. The plaintiffs' few purported allegations of fraudulent inducement, however, are vague and limited. Without more specific pleading, we cannot determine whether plaintiffs have alleged a "special injury" distinct from that suffered by other shareholders

who did not purchase shares during this designated time period.

Therefore, we find that without more specific pleading demonstrating that plaintiffs have suffered a "special injury," the claim of fraud and deceit under Delaware law must be brought as a derivative action, and must therefore comply with the requirements of Delaware law for bringing such actions. We leave open the possibility, however, that plaintiffs may be able to amend their complaint to show that they have suffered an injury distinct from that of other shareholders, and that consequently this claim may be appropriately brought as a class action.

## V. LACK OF STANDING TO ASSERT NEGLIGENT MISREPRESENTATION CLAIM RAISED IN COUNT III

Defendants contend that Count III should be dismissed because plaintiffs lack standing to assert a claim for negligent misrepresentation under Delaware law. Plaintiffs argue that they are part of a class to which defendants may be held liable for negligent misrepresentation.

The Delaware courts have adopted the position of the Restatement (Second) of Torts § 552 (1977) on the extent of liability for the negligent dissemination of information by one in a professional position. Under this rule, such a defendant is liable only to " 'a limited group of persons for whose benefit and guidance' " the information is intended. *Insurance Co. of North America v. Waterhouse*, 424 A.2d 675, 678 (Del. Super.1980) (quoting Restatement Section 552(2)(a)); *see also Gilbane Bldg. Co. v. Nemours Foundation*, 606 F.Supp. 995, 1001–02 (D.Del.1985) (citing Restatement Section 552 as authority for Delaware law and finding that plaintiffs were part of the "limited group of entities" for whose benefit the statements were made and could therefore bring a negligent misrepresentation claim). The cause of action for negligent misrepresentation is limited in this way to ensure that liability for negligence is less extensive than that for conscious fraud. *See* Comment (a), Restatement (Second) of Torts § 552 (1977). However,

the only documents which plaintiffs identify as containing the alleged misrepresentations are ones that were released to the public at large. If any member of the public who might choose to invest in KCI common stock were to qualify as part of a protected class, then the "limited group" requirement would be meaningless. Consequently, we find that plaintiffs are not members of a "limited" class for whose benefit the May 26th press release and June 9th Form 8–K were disseminated.

Therefore, we conclude that plaintiffs lack standing to assert the negligent misrepresentation claim set forth in Count III.

## VI. FAILURE TO STATE A CLAIM OF NEGLIGENT MISREPRESENTATION IN COUNT III

Even were plaintiffs to have standing to bring a claim of negligent misrepresentation, defendants argue that plaintiffs have failed to state such a claim, and that this count must therefore be dismissed pursuant to Fed.R.Civ.P. 12(b)(6). Plaintiffs counter that their allegations are sufficient to withstand dismissal.

Under Rule 12(b)(6), a count of a complaint may be dismissed for failure to state a claim only if, when accepting all factual allegations in the complaint as true and drawing all reasonable inferences from these facts, no relief could be granted under any set of facts that could be proved. *Melo v. Hafer*, 912 F.2d 628, 634 (3d Cir. 1990). Despite this liberal standard, however, we agree with defendants that plaintiffs' Count III is insufficient, even if plaintiffs did have standing to raise a claim of negligent misrepresentation based on public statements.

Plaintiffs have failed to allege facts which, if proved, would demonstrate all the elements of the tort of negligent misrepresentation under Delaware law. Pursuant to the Restatement (Second) of Torts § 552(1) (1977), the tort of negligent misrepresentation is defined as follows:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuni-

ary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Delaware law follows this Restatement definition. *See Gilbane,* 606 F.Supp. at 1001–02; *Insurance Co. of North America,* 424 A.2d at 678. Under this standard, plaintiffs do not, for example, adequately allege that they "justifiably relied" upon the challenged statements. Although Count III itself does include an allegation that plaintiffs purchased KCI stock "in reliance on" the alleged misrepresentations, Complaint ¶ 64, no facts are alleged to indicate such reliance. As discussed above, plaintiffs do not claim that they read the May 26th press release or the June 9th Form 8–K or that they learned of these documents' contents in any other way.

In addition, liability for the tort of negligent misrepresentation is premised on a defendant's supplying "false information," and not on the omission of material information. Yet, each of the six allegations of non-disclosure in plaintiffs' complaint appears to concern an omission rather than a false statement. Consequently, plaintiffs have also failed to allege the necessary predicate act for such liability. This pleading defect is even more severe as to the Lodestar Defendants, because plaintiffs have not even claimed that Lodestar made any statements, false or otherwise.

Therefore we conclude that plaintiffs have not pled sufficient facts from which defendants' liability for negligent misrepresentation could be proved. Thus, in Count III, plaintiffs have failed to state a claim upon which relief may be granted, and dismissal is appropriate under Rule 12(b)(6).

## VII. CONCLUSION

Therefore, we find that each of the three counts of plaintiffs' complaint fails to meet one or more applicable pleading requirements. For these reasons, we will grant both motions to dismiss, but will also grant plaintiffs leave to amend their complaint and cure these pleading deficiencies. An appropriate order will follow.