## In re SCOTT PAPER SECURITIES LITIGATION.

### Civ. A. No. 90–6192.

United States District Court,
E.D. Pennsylvania.

April 12, 1991.

Stuart H. Savett, Barbara A. Podell, and Kohn, Savett, Klein, Graf, P.C., Philadelphia, Pa.

Nicholas E. Chimicles, Miles B. Rittmaster, Greenfield & Chimicles, Haverford, Pa.

Donald A. Scott, Gregory M. Harvey, Shelley Levitan Adler, Morgan, Lewis & Bockius, Philadelphia, Pa.

Roberts B. Owen, Eric G. Lasker, Covington & Burling, Washington, D.C.

Norman M. Heisman, Scott Paper Co., Philadelphia, Pa., for Scott Paper Co. and Phillip E. Lippincott and Ashok N. Bakhrv.

## MEMORANDUM

LUDWIG, District Judge.

■ Defendants move to dismiss the complaint for failure to comply with Fed. R.Civ.P. 9(b).[1]

Plaintiffs' first amended and consolidated complaint[2] sets forth securities law claims under sections 10(b), 20(a) and Rule 10b–5,[3] together with a pendent state law count for negligent misrepresentation.[4] Jurisdiction is federal question. 15 U.S.C. § 78aa; 28 U.S.C. § 1331.

In part, the complaint states:

The 1990 earnings projections that Scott's management made or accepted, of earnings of $4.40 per share or within the range of $4.10 to $4.63 per share, were false and misleading and lacked any reasonable basis because Scott's management, including the individual defendants, knowingly or recklessly failed to incorporate certain adverse material facts into those projections, including *inter alia* the following:

(a) Scott was experiencing and would continue to experience continued significant operating and mix problems at its Muskegon and Somerset plants;

(b) Scott's ability to maintain earnings or achieve increased earnings was dependent upon, *inter alia*, the timely and non-disruptive completion of several mill expansion projects within their budgets, including projects at Somerset, Muskegon, and Chester, Pennsylvania plants and the additions of new machines at facilities in France, Italy, Malaysia, Thailand and Taiwan;

(c) The coated paper machine rebuild and expansion at Muskegon and the coated paper machine addition at Somerset could and did increase the costs of existing production at those facilities by, *inter alia*, disrupting production and increasing storage and inventory costs;

(d) Scott's ability to manage its new food service businesses and make them profitable, particularly its polystyrene cup business, was adversely impacted by price increases for polystyrene and restructuring costs to coordinate the new businesses; and

(e) As the industry, and particularly competitors Kimberly–Clark and Chesapeake, added capacity and new products, downward competitive pressure would be brought to bear on the tissue prices in the second half of 1990, which would negatively affect Scott's earnings.

Defendants knew and misrepresented or failed to disclose or were reckless in misrepresenting or not disclosing to the public the foregoing material facts and the adverse impact those facts would have on Scott's ability to meet defendants' forecasts of 1990 earnings. Defendants had no adequate or reasonable basis to justify or support the forecasts they made for Scott's 1990 earnings because, as defendants admitted, they were aware of problems which existed over ⁄

---

1. "Motions to dismiss for failure to satisfy Rule 9(b)'s particularity requirement may properly be characterized as motions to dismiss for failure to state a claim, pursuant to Rule 12(b)(6). *See* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1300." *Driscoll v. Landmark Bank for Savings,* 758 F.Supp. 48, 51 n. 2 (D.Mass.1991).

In deciding a Rule 12(b)(6) motion, factual allegations of the complaint are to be accepted as true and reasonable factual inferences will be drawn to aid the pleader. *D.P. Enterprises v. Bucks County Community College,* 725 F.2d 943, 944 (3d Cir.1984). A complaint will not be dismissed for failure to state a claim unless it appears beyond doubt that plaintiff can prove no set of facts that would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Johnsrud v. Carter,* 620 F.2d 29, 33 (3d Cir.1980).

2. On January 4, 1991 plaintiffs Elliot Dubowski, John Paul Decker, James B. Finnan, Frances S. Longstreth, Myron A. Lieberman and John J. Vaul filed an amended and consolidated complaint against defendants Scott Paper Company, Philip E. Lippincott and Ashok N. Bakhrv.

3. 15 U.S.C. §§ 78j, 78t; 17 C.F.R. 240.10b–5.

4. By stipulation dated February 1, 1991, plaintiffs withdrew count II, which stated a claim under sections 11, 12 and 15 of the Securities Act. 15 U.S.C. §§ 77k, 77*l*, 77*o*.

the past several quarters and that it was those problems which led them now to disclose that 1990 earnings would be below not only forecasted earnings but also below 1989 earning levels. In addition, the facts set forth in subparagraphs (a)—(e) hereof are also based upon reasonable inferences drawn (1) from the fact that defendants were aware on a monthly, if not a weekly or daily, basis of the operations of Scott's various lines of business and should have fully apprised themselves of the financial impact of Scott's operating problems before making any projections of earnings, (2) from the proximity in time of defendants' favorable statements with the Company's revelations that its problems would negatively impact earnings, and (3) the fact that existing problems that were known by defendants rather than any new developments were cited as a basis for the disclosure that Scott's earnings forecasts would not be achieved. However, the underlying information with respect to subparagraphs (a)—(e) hereof lies exclusively within the individual defendants' control. By making these statements, the individual defendants, acting for and in the name of Scott, intended to create and did create a false and misleading impression which inflated the market prices of Scott stock during the Class Period and the members of the Class purchased Scott common stock at artificially inflated prices and relied upon the integrity of the market or upon the statements disseminated by Scott and were damaged thereby.

Complaint at ¶ 34.

Defendants argue that even under this Circuit's flexible approach to Fed.R.Civ.P. 9(b)'s particularity requirement:

The Complaint contains absolutely no "facts" to suggest that [defendant] Mr. Lippincott's message of April 17, 1990, [that defendants expected 1990 earnings in the range of analysts' estimates of $4.10 to $4.63 per share,] was "without a reasonable basis." So far as one can tell from any of the alleged "facts," Mr. Lippincott's judgment of April 17, 1990, was entirely reasonable in the circumstances: Not a single "fact" giving rise to an inference of wrongdoing is alleged anywhere in this once-amended Complaint.

Def. mem. at 13. *See generally In Re Craftmatic Securities Litigation v. Kraftsow*, 890 F.2d 628 (3d Cir.1989).

■ Under Rule 9(b), fraud must be pleaded with particularity.

In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

The Rule applies to fraud claims under federal securities laws and under state law. *Christidis v. First Pennsylvania Mortgage Trust*, 717 F.2d 96, 99 (3d Cir.1983); *Brug v. The Enstar Group, Inc.*, 755 F.Supp. 1247, 1253 (D.Del.1991).

■ Sufficient factual detail as to the circumstances of the alleged fraud must be provided so as to place the other party on notice of the precise misconduct charged. *Seville Industrial Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 791 (3d Cir.1984), *cert. denied*, 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985). "Nonetheless, focusing exclusively on the particularity requirement 'is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules.'" *Craftmatic*, 890 F.2d at 645.[5]

■ In this action, the complaint contends that corporate income projections were false and misleading and made without reasonable basis. The cause of these discrepancies is alleged to have been the knowing or reckless failure "to incorporate certain adverse material facts into those projections," specifically in five areas. Complaint at ¶¶ 17–35. "A projection that is issued without a reasonable basis is an untrue statement and actionable under

---

**5.** Fed.R.Civ.P. 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief."

§ 10(b) and Rule 10b–5 if made knowingly or recklessly. *Eisenberg v. Gagnon*, 766 F.2d 770, 776 (3d Cir.), *cert. denied*, 474 U.S. 946, 106 S.Ct. 342, 88 L.Ed.2d 290 (1985)." *Craftmatic*, 890 F.2d at 646. The allegations must contain facts that if proved would substantiate the charge of lack of a reasonable basis. *See Craftmatic*, 890 F.2d at 646; *In re Midlantic Corp. Shareholder Litigation*, 758 F.Supp. 226, 231 (D.N.J.1990) ("policies embodied in Rule 9(b) [are] (1) to provide a defendant with fair notice of the plaintiff's claim, (2) to protect a defendant from harm to his goodwill, and (3) to reduce the number of strike suits"). "If the pleaded facts and supporting allegations permit the inference of a colorable claim for fraud and afford the defendant notice as to which actions or communications are alleged to have been fraudulent, the complaint will withstand a motion to dismiss." *Midlantic*, at 231.

Here, there are five corporate "problem areas" sufficiently particularized in the complaint, paragraph 34(a)(e), to qualify as adverse material facts. As defendants stress, the complaint concedes that these problems were disclosed in earlier public statements. However, according to the complaint, it was these very disclosures that formed the fraudulent background for the later income projections. Securities analysts, the market, and plaintiffs are alleged to have been misled to believe "that Scott was 'over the hump' in its declining earnings trend and manufacturing difficulties." Complaint at ¶ 26. *See Nicholas v. Poughkeepsie Savings Bank/FSB*, 1990 WL 145154, 4 (S.D.N.Y. Sept. 27, 1990) (Rule 9(b) motion denied when complaint alleged "the reasons why these statements were false or misleading, setting forth specifically what facts were omitted and what was misrepresented").

If, as is alleged, defendants knowingly or recklessly continued to adopt the analysts' projections of earnings in the range of $4.10 to $4.63 without considering these five so-called "problem areas," then defendants' statements on February 1, 1990, April 17, 1990, and July 17, 1990 can form the basis of an *Eisenberg* 10b–5 claim.[6] "To hold otherwise would allow corporations and those charged with their management to issue statements calculated to mislead investors by couching them with glowing yet relatively vague language, knowing full well that the investing public would attach to them meanings inducing them to invest in a corporation they otherwise would avoid." *Midlantic*, at 232.

In contrast to the specificity required for the "circumstances constituting fraud," Rule 9(b) permits "knowledge and other condition of mind of a person [to be] averred generally." This important distinction acknowledges the inherent difficulties in gathering specific facts that directly show a person's mental state. Here, at least arguably, the allegations "permit the inference that defendants are accused of possessing the requisite scienter to state a cause of action for fraud. *See In re Craftmatic Securities Litigation*, 890 F.2d at 645, 646 ('A projection that is issued without a reasonable basis is an untrue statement and actionable under § 10(b) and Rule 10b–5 if made knowingly or recklessly')." *Midlantic*, at 233. In addition to general allegations that defendants acted knowingly or recklessly, the complaint goes on to suggest specifically why defendants must have known that the company's problems had not been overcome—and that this information was within defendants' exclusive control. Complaint at ¶ 34.

---

**6.** *See* Complaint at ¶ 19 ("At the meeting [of securities analysts on February 1, 1990,] Scott's management stated that earnings of $4.40 per share for fiscal year 1990 ... were achievable, up from the $4.11 reported in fiscal year 1989"); ¶ 22 ("[M]anufacturing at [Muskegon] plant 'was beginning to show improvement'"); ¶ 23 ("At Scott's Annual Shareholders' meeting on April 17, 1990, the individual defendants reiterated the earnings forecast for 1990"); ¶ 24 ("Spokespersons for Scott's management [told] analysts on or after April 17 that manufacturing performance of the coated paper machine at Muskegon was beginning to show improvement"); ¶ 26 ("Scott management accepted and reinforced [the impression that 'Scott was over the hump'] in communications with securities analysts on or after July 17 by expressing overall confidence in Scott's earnings prospects and the progress of the expansion projects at S.D. Warren").

Defendants are not foreclosed from maintaining that they did consider the problems cited in the complaint and had a reasonable basis to adopt the analysts' projections. Plaintiffs' proof may fall short of the complaint's allegations. However, "Rule 9(b) does not require that a plaintiff plead with such particularity that the cause of action be proven prior even to the summary judgment stage of the litigation." *Midlantic,* at 232–33. The evidence may not make out any contemporaneous fraudulent knowledge or recklessness but only a set of business vicissitudes that eventually exposed the projections to hindsight accusations. Nevertheless, the complaint sufficiently and with specificity sets forth how and why the projections are claimed to have been made by defendants without reasonable basis, and that is what is required at this threshold stage of the case.[7] Defendants' motion to dismiss must be denied.

---

**7.** The cases defendants cite dismissing Rule 10b–5 "forecast" complaints do not contain the factual detail that amounts to "circumstances constituting fraud" required by Rule 9(b). *See In re One Bancorp Securities Litigation,* 135 F.R.D. 9, 13–14 (D.Me.1991) (allegations were made on information and belief and "most [were] wholly conclusory and offer[ed] no supporting facts on which they [were] founded"); *Brug,* 755 F.Supp. at 1254 ("Single paragraph of the complaint with its broad and conclusory language [alleging serious problems with a proposed IRS ruling] does not constitute pleading the circumstances of the alleged fraud with particularity"); *Gollomp v. MNC Financial, Inc.,* 756 F.Supp. 228, 231 (D.Md.1991) ("The consolidated complaint does not itself precisely identify the facts which plaintiffs allege demonstrate fraud as opposed to mere mismanagement or faulty economic prognostication"); *Haft v. Eastland Financial Corp.,* 755 F.Supp. 1123, 1128 (D.R.I.1991) ("The 'how' of this complaint is so general that it appears that paragraph 42 might apply to any financial institution in the Northeast").