24-2777
*Sabby Volatility Warrant Master Fund Ltd. v. Jupiter Wellness, Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

*Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.*

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 12th day of May, two thousand and twenty five.

PRESENT:     Gerard E. Lynch
     Steven J. Menashi,
     Eunice C. Lee,
      *Circuit Judges.*

_____

Sabby Volatility Warrant Master Fund Ltd.,

   *Plaintiff-Appellant*,

  v.              No. 24-2777

Jupiter Wellness, Inc.,

   *Defendant-Appellee.*

_____

*For Plaintiff-Appellant*:  THOMAS J. FLEMING (Natasha G. Menell and Sahand Farahati, *on the brief*), Olshan Frome Wolosky LLP, New York, NY.

*For Defendant-Appellee*:  KARI PARKS, Gusrae Kaplan Nusbaum PLLC, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Failla, J.).

Upon due consideration, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court is **AFFIRMED** in part and **VACATED** and **REMANDED** in part.

Plaintiff-Appellant Sabby Volatility Warrant Master Fund, Ltd. ("Sabby") sued Defendant-Appellant Jupiter Wellness, Inc. ("Jupiter") for breach of contract, promissory estoppel, negligent misrepresentation, and negligence in connection with Jupiter's alleged failure to honor the record date it initially set for a planned distribution of shares of its subsidiary, SRM Entertainment, Inc. ("SRM"). According to the amended complaint, on June 27, 2023, Jupiter's board of directors determined that the company would issue shares of SRM common stock to Jupiter's shareholders, with July 7, 2023, as the record date for the distribution. A press release announcing the SRM dividend—as well as the July 7 record date—was released to the public on June 27, 2023. Sabby held Jupiter shares on July 7, 2023, but it sold those shares and acquired a short position in Jupiter's stock before the dividend was ultimately distributed on August 15, 2023. When Jupiter distributed the SRM dividend, it did so to shareholders of record as of August 14, 2023, rather than July 7, 2023.

Jupiter moved to dismiss the amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The district court granted the motion to dismiss, holding that Sabby lacked "standing" to bring its breach of contract claim

because the right to sue for breach of contract based on a corporation's bylaws travels with the stock and Sabby had sold its shares of Jupiter stock before filing the lawsuit. *Sabby Volatility Warrant Master Fund Ltd. v. Jupiter Wellness, Inc.*, No. 23-CV-7874, 2024 WL 4265949, at *6-7 (S.D.N.Y. Sept. 23, 2024). The district court dismissed Sabby's remaining claims on "the merits." *Id.* at *8.

On appeal, Sabby argues that the district court erred by dismissing its breach of contract claim for lack of standing because under Delaware law, the right to receive a declared dividend vests in the shareholder as of the record date and does not transfer with the shares. Sabby also argues that the district court erred by dismissing its claims for promissory estoppel, negligent misrepresentation, and negligence. We assume the parties' familiarity with the facts, the procedural history, and the issues on appeal.

## I

"We review a district court's grant of a motion to dismiss *de novo*, 'accepting as true all factual claims in the complaint and drawing all reasonable inferences in the plaintiff's favor.'" *Henry v. County of Nassau*, 6 F.4th 324, 328 (2d Cir. 2021) (quoting *Fink v. Time Warner Cable*, 714 F.3d 739, 740-41 (2d Cir. 2013)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## II

Sabby argues that the district court erred by dismissing its breach of contract claim for lack of standing. We agree.

## A

To determine whether a former shareholder has standing to bring a claim against a corporation, a court must determine whether the claim is personal to the plaintiff or belongs to the corporation itself. *See Urdan v. WR Cap. Partners, LLC*, 244 A.3d 668, 676-77 (Del. 2020); *Citigroup Inc. v. AHW Inv. P'ship*, 140 A.3d 1125,

3

1127 (Del. 2016). "In general, 'a purchaser of a certificated or uncertificated security acquires all rights in the security that the transferor had or had power to transfer.'" *Urdan*, 244 A.3d at 677 (quoting 6 Del. C. § 8-302(a)). "The phrase 'all rights in the security' can be understood as distinguishing between personal rights of the holder, on the one hand, and rights that inhere in the security itself, on the other." *In re Sunstates Corp. S'holder Litig.*, No. 13284, 2001 WL 432447, at *3 (Del. Ch. Apr. 18, 2001). "The rights in the security are rights arising from the relationship among stockholder, stock and the company. Rights that are personal to the security holder, however, do not travel with the sale of a security." *Urdan*, 244 A.3d at 677 (internal quotation marks and footnote omitted).

The district court erred in holding that Sabby lost standing to pursue its breach of contract claim when it sold its Jupiter shares. Under Delaware law, "the right to receive payment of a lawfully declared dividend is a separate property right of the record stockholders and, thus, is not a right 'in the security'" that transfers with the sale of shares. *Sunstates*, 2001 WL 432447, at *3. For that reason, a "record holder as of the record date … retains the right to the dividend" even after the shares are sold. *Id.* at *3 n.11. This principle is reflected in Jupiter's bylaws, which provide that "only stockholders of record on the date so fixed shall be entitled … to receive payment of such dividend … notwithstanding any transfer of any stock on the books of the Corporation after any such record date fixed." App'x 83 (§ 6.9).

If the district court were correct that a record-date holder who sells shares after the record date loses standing, then no party would have standing to enforce the alleged dividend right because Jupiter's bylaws provide that transferees after the record date have no right to the dividend. Delaware law does not contemplate such a result. Rather, under Delaware law, the right to payment is a personal claim of the record-date holder that does not travel with the shares sold after the record date. Because Sabby alleges that it held Jupiter shares on July 7, 2023—the only record date that Jupiter validly established for the SRM dividend, according to the

4

amended complaint—Sabby has standing to bring a breach of contract claim to enforce its alleged contractual right to the dividend.

**B**

The district court further erred by holding, in the alternative, that the SRM dividend was "properly classified as a 'spin-off dividend'" akin to a stock dividend that did not create any contractual rights. *Sabby*, 2024 WL 4265949, at *7 n.5. Delaware General Corporation Law § 173 recognizes only three types of dividends: cash dividends, property dividends, and stock dividends. 8 Del. C. § 173. The declaration of a cash or property dividend creates a binding contract between the corporation and shareholders as of the dividend's record date. *See Anadarko Petroleum Corp. v. Panhandle E. Corp.*, 545 A.2d 1171, 1175 (Del. 1988) ("[U]pon a valid declaration of a [cash or property] dividend the corporation becomes indebted to the stockholder, and the stockholder may recover the declared amount in an action, *ex contractu*, against the corporation."). "However, the same rule does not extend to stock dividends." *Id.*

The dividend at issue in this case—a distribution of shares of Jupiter's subsidiary—qualifies as a property dividend, not a stock dividend. *See IDT Corp. v. U.S. Specialty Ins. Co.*, No. N18C-03-032, 2019 WL 413692, at *13 (Del. Super. Ct. Jan. 31, 2019) ("[I]n Delaware statutory terms, a 'spin-off' is a dividend paid in the *property* of the parent corporation, *not* a sale of its securities.") (emphasis added); *In re IAC/InterActive Corp.*, 948 A.2d 471, 511 (Del. Ch. 2008) (holding that a distribution of subsidiary shares "is not a stock dividend"). Because a property dividend, once declared with a fixed record date, creates a binding obligation for the corporation to distribute the dividend to shareholders of record as of that date, Sabby has plausibly alleged a breach of contract claim based on the declaration of the divided under Jupiter's bylaws and Delaware law. *See Selly v. Fleming Coal Co.*, 180 A. 326, 328 (Del. Super. Ct. 1935) ("The right of action is in the nature of a contract and grows out of the declaration of a lawful dividend.").

5

Accordingly, we vacate the judgment of the district court insofar as it dismissed Sabby's breach of contract claim and remand for further proceedings on that claim.

## III

Sabby next argues that the district court erred by dismissing its claims for promissory estoppel, negligent misrepresentation, and negligence. We disagree.

## A

Sabby asserted a claim for promissory estoppel based on Jupiter's public statements in press releases and SEC filings regarding the record date for the SRM dividend. To establish a claim for promissory estoppel under Delaware law, a plaintiff must show that "(i) a promise was made; (ii) it was the reasonable expectation of the promisor to induce action or forbearance on the part of the promisee; (iii) the promisee reasonably relied on the promise and took action to his detriment; and (iv) such promise is binding because injustice can be avoided only by enforcement of the promise." *Chrysler Corp. (Delaware) v. Chaplake Holdings, Ltd.*, 822 A.2d 1024, 1032 (Del. 2003) (quoting *Lord v. Souder*, 748 A.2d 393, 399 (Del. 2000)). "The promise must be a real promise—mere expressions of expectation, opinion, or assumption are insufficient. The promise must also be reasonably definite and certain." *Territory of U.S. Virgin Islands v. Goldman, Sachs & Co.*, 937 A.2d 760, 804 (Del. Ch. 2007) (footnote omitted), *aff'd*, 956 A.2d 32 (Del. 2008).

We agree with the district court that Jupiter's press releases and SEC filings regarding the record date of July 7, 2023, did not constitute an enforceable promise that was reasonably definite and certain. The June 27 press release cautioned that the distribution was "expected to be paid" subject to several conditions, including SEC approval and NASDAQ listing, and it warned that "the distribution will not be paid on such date and the spin-off transaction will not occur" if these conditions were not met. App'x 72. It also cautioned that forward-looking statements in the press release "inherently involve significant risks and uncertainties" that "may cause actual results and the timing of events to differ materially from those

6

anticipated." *Id.* at 73. Given these warnings, Sabby could not reasonably rely on the record date announcement as a reasonably definite and certain promise.

**B**

Sabby brought a claim for negligent misrepresentation, alleging that Jupiter negligently misrepresented that the record date for the distribution was July 7, 2023. To state a claim for negligent misrepresentation under Delaware law, a plaintiff must adequately allege that "(1) the defendant had a pecuniary duty to provide accurate information, (2) the defendant supplied false information, (3) the defendant failed to exercise reasonable care in obtaining or communicating the information, and (4) the plaintiff suffered a pecuniary loss caused by justifiable reliance upon the false information." *Steinman v. Levine*, No. 19107, 2002 WL 31761252, at *15 (Del. Ch. Nov. 27, 2002), *aff'd*, 822 A.2d 397 (Del. 2003). Delaware courts have adopted § 552 of the Restatement (Second) of Torts, which limits negligent misrepresentation claims to "members of 'a limited group of persons for whose benefit and guidance' the information is intended." *In re Delmarva Sec. Litig.*, 794 F. Supp. 1293, 1310 (D. Del. 1992).

The district court properly dismissed Sabby's claim for negligent misrepresentation. The statements regarding the record date were made in Jupiter's public announcements and SEC filings, which were directed to the market at large, not to a limited group that included Sabby specifically. Courts applying Delaware law have consistently held that such public statements do not create the type of special relationship necessary to support a claim of negligent misrepresentation, even by a current shareholder. *See Glosser v. Cellcor Inc.*, No. 12725, 1994 WL 593929, at *22 (Del. Ch. Sept. 2, 1994) ("[I]t has been held that general statements such as press releases or even 8K and 10K filings are directed to the general public and do not implicate a class to which a special duty of care is owed."); *see also Brug v. Enstar Grp., Inc.*, 755 F. Supp. 1247, 1258 (D. Del. 1991) (dismissing a negligent misrepresentation claim because "the only documents which plaintiffs identify as containing the alleged misrepresentations are ones that

were released to the public at large"); *Delmarva*, 794 F. Supp. at 1310 (same). Accordingly, Sabby failed to state a claim for negligent misrepresentation.

## C

Finally, Sabby asserted a claim for negligence, alleging that Jupiter failed to exercise reasonable care in issuing the SRM dividend to the wrong set of shareholders. To state a claim for negligence under Delaware law, a plaintiff must allege that "defendant owed plaintiff a duty of care; defendant breached that duty; and defendant's breach was the proximate cause of plaintiff's injury." *Pipher v. Parsell*, 930 A.2d 890, 892 (Del. 2007) (quoting *New Haverford P'ship v. Stroot*, 772 A.2d 792, 798 (Del. 2001)).

The district court correctly determined that Sabby failed to establish that Jupiter owed it a duty of care. Under Delaware law, corporations do not owe fiduciary duties to their stockholders; such duties are owed by directors and officers, not by the corporation itself. *See, e.g.*, *A.W. Fin. Servs., S.A. v. Empire Res., Inc.*, 981 A.2d 1114, 1127 n.36 (Del. 2009). While Sabby argues that it is asserting an ordinary duty of care rather than a fiduciary duty, it has failed to identify any Delaware precedent establishing such a duty in this context. Accordingly, we conclude that Sabby failed to state a claim for negligence.

\* \* \*

We have considered Sabby's remaining arguments, which we conclude are without merit. For the foregoing reasons, we vacate the judgment of the district court insofar as it dismissed Sabby's claim for breach of contract and remand for further proceedings on that claim. We affirm the judgment of the district court insofar as it dismissed Sabby's claims for promissory estoppel, negligent misrepresentation, and negligence.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court